**OUTTEN & GOLDEN LLP**
Laurence Moy (LM 3687)
ReNika Moore (RM 3484)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

SUSAN YOSS,

                    Plaintiff,

  - against -

IGPS COMPANY LLC; PEGASUS CAPITAL
ADVISORS, LP; PEGASUS CAPITAL
ADVISORS G.P., LLC; PEGASUS CAPITAL
ADVISORS III, LP; PEGASUS INVESTORS III, LP;
PEGASUS INVESTORS III G.P., LLC,

                    Defendants.
_____

## MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I.     Plaintiff Has Alleged Sufficient Facts to Satisfy Plaintiff's Low Burden at the
Pleadings Stage ................................................................................................................... 2

     A.     Plaintiff Has Adequately Stated a Claim That Pegasus is Liable for
Breach of Contract .................................................................................................. 3

     B.     Pegasus Entities Cannot Escape Liability, at Least Not at This Early
Stage ........................................................................................................................ 7

CONCLUSION ................................................................................................................................ 9

## TABLE OF AUTHORITIES

### CASES

*Allen v. WestPoint-Pepperell, Inc.*,
    945 F.2d 40 (2d Cir. 1991)..................................................................................................2

*Alter v. Bogoricin*,
    No. 97 Civ. 0662, 1997 U.S. Dist. LEXIS 17369 (S.D.N.Y. Nov. 6, 1997) ............................4

*AmBase Corp. v. City Investing Co. Liquidating Trust*,
    326 F.3d 63 (2d Cir. 2003)...................................................................................................2

*American Fuel Corp. v. Utah Energy Development Co.*,
    122 F.3d 130 (2d Cir. 1997).................................................................................................4

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...................................................................................................2

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007).........................................................................................................2

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*,
    98 F.3d 13 (2d Cir. 1996) ....................................................................................................3

*City National Bank of Fla. v. Morgan Stanley DW, Inc.*,
    No. 05 Civ. 2739, 2007 U.S. Dist. LEXIS 22187 (S.D.N.Y. Mar. 29, 2007)...........................4

*Crabtree v. Tristar Automobile Group, Inc.*,
    776 F. Supp. 155 (S.D.N.Y. 1991)........................................................................................8

*Darby Trading Inc. v. Shell International Trading & Shipping Co.*,
    No. 07-CV-0400, 2008 U.S. Dist. LEXIS 25980 (S.D.N.Y. Mar. 28, 2008) ...........................2

*Dover Ltd. v. A.B. Watley, Inc.*,
    No. 04 Civ. 7366, 2006 U.S. Dist. LEXIS 81391 (S.D.N.Y. Nov. 8, 2006) .......................6, 7

*Gant v. Wallingford Board of Education*,
    69 F.3d 669 (2d Cir. 1995)...................................................................................................7

*In re Alstom SA Sec. Litigation*,
    454 F. Supp. 2d 187 (S.D.N.Y. 2006)...................................................................................4

*International Customs Associates, Inc. v. Ford Motor Co.*,
    893 F. Supp. 1251 (S.D.N.Y. 1995)......................................................................................8

*International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*,
   475 F. Supp. 2d 456 (S.D.N.Y. 2007)........................................................................3

*Itel Containers International Corp. v. Atlanttrafik Express Serv. Ltd.*,
   909 F.2d 698 (2d Cir. 1990)......................................................................................3

*JSC Foreign Economic Association Technostroyexport v. International Development &
   Trade Services, Inc.*,
   295 F. Supp. 2d 366 (S.D.N.Y. 2003)........................................................................3

*Mellencamp v. Riva Music Ltd.*,
   698 F. Supp. 1154 (S.D.N.Y. 1988)...........................................................................8

*Oteze Fowlkes v. Adamec*,
   432 F.3d 90 (2d Cir. 2005).........................................................................................2

*Weisman v. LeLandais*,
   532 F.2d 308 (2d Cir. 1976).......................................................................................7

*Welch Allen, Inc., v. New Image Industrial, Inc.*,
   No. 97-CV-240, 1998 U.S. Dist. LEXIS 6564 (N.D.N.Y. May 5, 1998)...............3, 7

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*,
   933 F.2d 131 (2d Cir. 1991)...................................................................................3, 4

**PRELIMINARY STATEMENT**

Defendants' motion is an unnecessary make-work exercise because their arguments are meritless. Defendants prematurely attack Plaintiffs' alter ego theory. Defendants ignore factual allegations that raise material issues that cannot be decided at the outset of litigation, before the parties have engaged in discovery.

**FACTUAL BACKGROUND**

The following facts were properly alleged in the Complaint: as described in detail below, Pegasus Capital Advisors LP, Pegasus Capital Advisors III LP, Pegasus Capital Advisors, GP, LLC, Pegasus Investors III, L.P., and Pegasus Investors III G.P., LLC (collectively referred to hereinafter as "Pegasus") control and manage iGPS Company LLC ("iGPS") (iGPS Company LLC and Pegasus Defendants collectively referred to as "Defendants"), and were responsible for Ms. Yoss's termination and iGPS's breach of her employment contract. iGPS leases plastic trackable shipping pallets to manufacturers, suppliers, and shippers. Compl. ¶ 9. In early 2007, Pegasus Partner and iGPS Board Member, Richard Weinberg, recruited Susan Yoss to work for iGPS as the Chief Financial Officer and to serve in several capacities for the Pegasus entities. (*Id.* ¶ 19.) Ms. Yoss came aboard and did exactly what Pegasus and iGPS brought her in to do—raise capital and attempt to get the fledgling iGPS's financial house in order. (*Id.* ¶¶ 32-34, 35, 38.)

When Ms. Yoss and the iGPS leadership, managed closely by Pegasus officers, began to clash, Defendants fired Ms. Yoss. (*Id.* ¶¶ 37-39, 41, 55.) Defendants refused to honor their obligations to pay Ms. Yoss severance and other benefits under her employment contract, (*id.* ¶ 1), contending – falsely – that Ms. Yoss resigned voluntarily (*id.* ¶¶ 2, 58). The Complaint's factual allegations demonstrate, however, that iGPS operated as the alter ego of Pegasus, with Pegasus overseeing and directing iGPS's key decisions, <u>including</u> the decision to

terminate Ms. Yoss's employment and the decision to deny her payments to which she was contractually entitled. (*Id.* ¶¶ 35, 53.)[1] Defendants' refusal to pay Ms. Yoss what she is contractually owed forms the basis for this action. (*Id.* ¶¶ 64-65.)

## ARGUMENT

### I. Plaintiff Has Alleged Sufficient <u>Facts</u> To Satisfy Plaintiff's Low Burden at the Pleadings Stage.

A 12(b)(6) motion is based solely on the allegations in the complaint. *See Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). Defendants wrongly argue that pleading facts – without arguing legal conclusions or attaching labels to explain the legal theories underlying the facts – is somehow inadequate. Courts, however, have stressed substance over style. *See, e.g., Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, No. 07-CV-0400, 2008 U.S. Dist. LEXIS 25980, at *8-9 (S.D.N.Y. Mar. 28, 2008) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)), at the Declaration of ReNika Moore in Support of Plaintiff's Opposition to Motion to Dismiss ("Moore Dec.") Ex. 1.

In evaluating a motion to dismiss, the Court must accept the factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Oteze Fowlkes v. Adamec,* 432 F.3d 90, 95 (2d Cir. 2005). The Court should only "assess the legal feasibility of the complaint," not weigh the evidence. *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003). Plaintiffs must only "provide the grounds upon which [their] claim rests through factual allegations sufficient 'to raise a right to relief

---

[1] The Defendants, which Akin Gump is claiming are unrelated, are apparently sufficiently related to share Akin Gump as their counsel.

above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp.*, 127 S.Ct. at 1965). Plaintiff easily meets this standard.

### A. Plaintiff Has Adequately Stated a Claim that Pegasus Is Liable for Breach of Contract.

Plaintiff clearly states a claim upon which relief can be granted with respect to the Pegasus entities. Pegasus is liable for iGPS's breach of contract by virtue of the control it exercises over iGPS, its role in Ms. Yoss's termination, and its interference with iGPS's contractual obligations, since New York law permits the corporate veil to be pierced "when the corporation has been used as an alter ego" *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991) (quoting *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 703 (2d Cir. 1990)), or "where the parent controlled the actions of the subsidiary *and* where the parent could have stopped the infringement . . . ." *Welch Allen, Inc., v. New Image Indus., Inc.*, No. 97-CV-240, 1998 U.S. Dist. LEXIS 6564, at *5 (N.D.N.Y. May 5, 1998) (emphasis in original), at Moore Dec. Ex. 2.

To support a claim on an alter ego theory, a plaintiff must allege facts showing that the "dominating corporation" exercised complete control over the dominated entity "that le[d] to a wrong against third parties." *Wm. Passalacqua Builders, Inc.*, 933 F.2d at 138; *see also Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.,* 475 F. Supp. 2d 456, 459 (S.D.N.Y. 2007). To determine whether the dominating corporation should be held liable, "the courts apply the preexisting and overarching principal 'that liability is imposed to reach an equitable result.'" *Welch Allen, Inc.,* 1998 U.S. Dist. LEXIS 6564, at *5 (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 17-18 (2d Cir. 1996)).

The analysis to determine whether the corporate veil should be pierced requires a fact-intensive inquiry, and therefore cannot be determined on the pleadings. *See JSC Foreign Econ.*

3

*Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,* 295 F. Supp. 2d 366, 378 (S.D.N.Y. 2003) (rejecting alleged alter ego's motion to dismiss because it "ignore[d] the substance of the [complaint]" and "impose[d] too high a burden on the plaintiff's pleading"); *Alter v. Bogoricin,* No. 97 Civ. 0662, 1997 U.S. Dist. LEXIS 17369, at *13 (S.D.N.Y. Nov. 6, 1997) ("[P]laintiff's **alter-ego allegations are judged by the liberal notice pleading standards** of Civ. P. 8(a) . . . .") (emphasis added), at Moore Dec. Ex. 3. New York courts have articulated a non-exhaustive list of ten factors to consider in determining whether a defendant has exercised 'complete control' and 'domination':

(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.,* issuance of stock, election of directors, keeping of corporate records and the like,
(2) inadequate capitalization,
(3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes,
(4) overlap in ownership, officers, directors, and personnel,
(5) common office space, address and telephone numbers of corporate entities,
(6) the amount of business discretion displayed by the allegedly dominated corporation,
(7) whether the related corporations deal with the dominated corporation at arms length,
(8) whether the corporations are treated as independent profit centers,
(9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and
(10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Wm. Passalacqua Builders, Inc.*, 933 F.2d at 139; *see also City Nat'l Bank of Fla. v. Morgan Stanley DW, Inc.*, No. 05 Civ. 2739, 2007 U.S. Dist. LEXIS 22187, *10-11 (S.D.N.Y. Mar. 29, 2007), at Moore Dec. Ex. 4; *American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997).

A plaintiff need not allege all factors to assert a colorable claim against a non-signatory in a complaint. *In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187, 216 (S.D.N.Y. 2006) (upholding plaintiff's claim despite the fact that many of the *Passalacqua* factors had not been

4

alleged). The complaint need only "put [Defendants] on notice of [Plaintiff's] claim, and thus fulfill Rule 8(a)'s requirements at this stage in the litigation." *Id.* Here, contrary to what Defendants argue, the facts alleging Pegasus's extensive involvement and control over iGPS generally—and specifically playing a crucial role in iGPS's breach of Ms. Yoss's employment contract—satisfy Plaintiff's notice requirements under Rule 8(a). Plaintiff has alleged facts relevant to at least seven of the *Passalacqua* factors, which is more than sufficient to defeat Defendants' 12(b)(6) motion.

  That iGPS functioned with almost all its initial financing coming through Pegasus is evidence of the second *Passalacqua* factor. (Compl. ¶ 21.) In addition, IGPS and Pegasus have significant overlap in ownership, officers, and directors. Regarding the fourth factor, all but one of the iGPS board members holds or did hold positions with Pegasus. (*Id.* ¶ 28.) Indeed, <u>iGPS has no independent representation on either its executive committee or its compensation committee</u>; all members of both committees held simultaneously high-ranking affiliations with Pegasus. (*Id.* ¶ 28.) Allegations that Ms. Yoss worked from a small conference room at Pegasus' New York office for nearly half of her employment satisfy the fifth and tenth factors, which address common office space, address, and property of the two related entities. (*Id.* ¶ 26.)

  Regarding the sixth factor, Pegasus kept a tight rein on iGPS's ability to exercise business discretion. (*Id.* ¶ 35.) Pegasus principals were involved in most business decisions, interacting daily with iGPS leadership for this purpose. (*Id.*) Bobby Moore, the iGPS CEO and Chairman and Pegasus Operating Advisor, consulted Pegasus on almost every type of iGPS business decision. *Id.* Given the many overlapping positions and lack of clear delineation of roles, direction and oversight were convoluted. For example, was Richard Weinberg, in his role as an iGPS employee, a subordinate of Moore, or was Moore a subordinate of Weinberg, who was a Pegasus Partner? Similarly, were Moore and Ms. Yoss, both Operating Advisors to

5

Pegasus, representing Pegasus or iGPS employee interests? Indeed, as part of Defendants' efforts to recruit Ms. Yoss, Weinberg, an IGPS board member and Pegasus partner, and other Pegasus executives expressly committed to involve Ms. Yoss in Pegasus activities. (*Id.* ¶ 19.) To this end, Defendants appointed Ms. Yoss as Operating Advisor to Pegasus. (*Id.*)

Moreover, relevant to the seventh factor, because of the significant overlap in officers and directors between iGPS and Pegasus, the companies did not deal at arms' length. For example, Pegasus partner Weinberg and Pegasus Operating Advisor Lew Taffer were direct employees of iGPS, in addition to other roles with other Pegasus portfolio companies. (*Id.* ¶ 36.) Relevant to both the seventh and ninth factors, Weinberg and Taffer received a significant part of their annual cash compensation from iGPS regardless of the amount of work they actually performed for iGPS as compared to their work on behalf of Pegasus, as alleged in the Complaint. (*Id.*)

In addition, Pegasus principals are implicated in the central fact in dispute: whether Pegasus fired Ms. Yoss without cause. (*Id.* ¶¶ 37, 39, 53.) iGPS CEO and Pegasus advisor Bobby Moore told Ms. Yoss that the Pegasus partners "no longer wanted to deal with [Ms. Yoss]." (*Id.* ¶ 53.) This statement addresses Pegasus's direct influence on Defendants' decision to terminate Ms. Yoss and is not appropriately evaluated on a 12(b)(6) motion.

New York courts have permitted cases to proceed on facts similar to those alleged here. In this district, the court in *Dover Ltd. v. A.B. Watley, Inc.*, denied dismissal where, like here, the complaint alleged that non-signatory parties were part of the same group of companies, and shared common management, office space, administrative services, and employees. No. 04 Civ. 7366, 2006 U.S. Dist. LEXIS 81391, at *29-32 (S.D.N.Y. Nov. 8, 2006) at Moore Dec. Ex. 5. Similar to Weinberg's role in Ms. Yoss's termination, in *Dover*, a key individual alleged to be responsible for plaintiff's injury, held positions with both the alter ego and the parent company.

6

*Id.* The court in *Dover* denied Defendant's dismissal motion because "the Plaintiffs certainly have alleged enough of an interrelationship between ABW and the other ABW Companies to permit this fraud case to proceed against all of the Defendants." *Id.* at *31. In *Welch Allen*, a New York district court also denied dismissal where the only allegations of a connection between the entities at issue were that (a) the parent corporation owned 100% of the alter ego; (b) the two companies shared the same officers; (c) the parent company determined the name to be used in advertisements for the other company; and (d) the parent company generally controlled the actions of the alter ego. *Welch Allen, Inc.*, 1998 U.S. Dist. LEXIS 6564, at *6.

Even where the court has acknowledged weaknesses in a plaintiff's case, such weaknesses do not defeat Plaintiff's claim at the pleadings stage. *Id.* at *6 ("[W]hile Plaintiff may have a weak case for piercing [defendant's] corporate veil, <u>that is not the standard the Court employs in evaluating a Rule 12(b)(6)</u> motion.") (emphasis added). "[I]t may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test [for dismissal under Rule 12(b)(6)]." *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976) (per curiam)). In any event, here, Defendants have already admitted that: (a) almost all of iGPS's board and every member of iGPS's Executive and Compensation Committees were affiliated with Pegasus (Ans. ¶ 28), (b) Pegasus is an iGPS shareholder (*id* ¶ 21), (c) Pegasus Partner Weinberg and Pegasus Operating Advisor Taffer also received compensation and benefits from iGPS (*id* ¶ 36), and (d) Pegasus held the lease for the office space where Ms. Yoss worked for nearly half her employment (*id*. ¶ 26).

### B. Pegasus Entities Cannot Escape Liability, at Least Not at this Early Stage.

Pegasus played a key role in Ms. Yoss's termination and iGPS's failure to pay Ms. Yoss.

7

In light of this role, Pegasus cannot escape liability — at least not pre-discovery. *See Dover Ltd.*, 2006 U.S. Dist. LEXIS 81391, at *29 ("At this preliminary stage, the Plaintiffs have no way of knowing whether the [defendant] observed corporate formalities.")  The Court should deny Defendants' premature attempt to eliminate Pegasus from the case.

The cases that Defendants cite in support of their argument are easily distinguishable. Plaintiff has alleged many more facts—and in far more detail—showing that Pegasus interfered with iGPS's operations than the paucity of facts alleged in the cases Defendants have cited.  For example, in *Int'l Customs Assocs., Inc. v. Ford Motor Co.,* the plaintiff did not allege <u>a single fact</u> connecting the defendant to the breach or any of the other factors supporting an alter ego theory.  893 F. Supp. 1251, 1256-7 (S.D.N.Y. 1995).  Similarly, in *Crabtree v. Tristar Automotive Group, Inc.,* the court held that the plaintiff "ha[d] not alleged <u>in any way, shape or form</u> facts that could prove that TriStar was . . . an alter ego dominated by the individual defendants . . . ."  776 F. Supp. 155, 166 (S.D.N.Y. 1991) (emphasis added).  Defendant's claim that the instant case is analogous to *Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154 (S.D.N.Y. 1988) because the non-signatory shared same director also fails.  In *Mellencamp*, the shared directors were "strangers" to the contract at issue.  *Id.* at 1160.

Here, as shown above, Pegasus not only knew of the existence of Ms. Yoss's contract, Pegasus was <u>integrally involved</u> in her employment <u>and the governing contract</u> from start to finish.  Pegasus recruited Ms. Yoss to join iGPS as CFO in early 2007, in addition to roles in various Pegasus entities, and <u>Pegasus partners and advisors were actively involved</u> in iGPS's decision to deny Ms. Yoss her contractual payments after Defendants terminated her.  The sturdy and far-ranging factual allegations against Pegasus simply do not compare to the anemic pleadings before the court in *Ford Motor*, *Crabtree*, and *Mellencamp*.

## CONCLUSION

The standard for a motion to dismiss is very high because all factual allegations must be taken as true. Here, Plaintiff has alleged facts showing that Pegasus controlled iGPS's operations and that Pegasus's control of iGPS was manifested in, *inter alia*: (a) Pegasus's daily monitoring of iGPS business, (i*d.* ¶ 35.), (b) Pegasus's virtually complete overlap in iGPS senior management, (*id.* ¶ 28), (c) Pegasus's representation amongst iGPS personnel, (i*d.* ¶ 36), and (d) iGPS's sharing of Pegasus office space, (i*d.* ¶ 26). Most importantly, as required by New York courts, Plaintiff has alleged facts asserting that Pegasus directed the event giving rise to Plaintiff's claim—Defendants' decision to fire Ms. Yoss and deny her payments. Defendants' argument that plaintiff has not alleged sufficient facts to keep Pegasus in this action ignores ten pages of facts alleged in the 12-page Complaint. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety, and grant Plaintiff such other and further relief as the court deems just and proper.

Dated: New York, New York
April 16, 2008

By: \s\ ReNika C. Moore

**OUTTEN & GOLDEN LLP**
Laurence S. Moy (LM 3687)
ReNika C. Moore (RM 3484)
3 Park Avenue, 29th Floor
New York, New York 10016

Telephone: (212) 245-1000