IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN YOSS, <br><br> Plaintiff, <br><br> - against - <br><br> IGPS COMPANY, LLC; PEGASUS CAPITAL ADVISORS, LP; PEGASUS CAPITAL ADVISORS G.P., LLC; PEGASUS CAPITAL ADVISORS III, LP; PEGASUS INVESTORS III, LP; PEGASUS INVESTORS III G.P., LLC, <br><br> Defendants. | No. 08 CV 02212 (MGC) (MHD) <br> **FILED BY ECF** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS BY PEGASUS CAPITAL ADVISORS, LP, PEGASUS CAPITAL ADVISORS, G.P., LLC, PEGASUS CAPITAL ADVISORS III, LP, PEGASUS INVESTORS III, LP, AND PEGASUS INVESTORS III G.P., LLC**

Stephen M. Baldini (SB-2070)
Austin K. So (AS-8348)
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022
(212) 872-1000

*Counsel for Defendants Pegasus Capital Advisors, LP, Pegasus Capital Advisors, G.P., LLC, Pegasus Capital Advisors III, LP, Pegasus Investors III, LP, and Pegasus Investors III G.P., LLC*

683206.0001 EAST  7995381 v10

## TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I. PLAINTIFF'S BREACH OF CONTRACT CLAIM AGAINST NON-SIGNATORIES MUST BE DISMISSED ............................................................... 2

    A. Plaintiff fails to distinguish her breach of action from cases cited in Pegasus Defendants' Initial Brief. ............................................................. 2

II. PLAINTIFF FAILS TO MEET NOTICE PLEADING REQUIREMENTS OF RULE 8(A) ................................................................................................................. 4

    A. Plaintiff's failure to differentiate among the 5 Pegasus Defendants warrants dismissal of the alter ego claim under Rule 8(a). ......................... 4

    B. Plaintiff failed to give adequate notice of her alter ego claim under Rule 8(a). ......................................................................................................... 5

III. EVEN IF COMPLAINT MET NOTICE PLEADING REQUIREMENTS OF RULE 8(A), COMPLAINT STILL FAILS TO ADEQUATELY STATE ALTER EGO CLAIM .............................................................................................................. 7

    A. New York law on piercing the corporate veil. ............................................. 7

    B. Fraud-or-Wrong Prong: Complaint fails to adequately allege that each Pegasus Defendant used its domination of iGPS to cause the alleged wrong to Plaintiff. ......................................................................................... 8

    C. Domination Prong: Complaint fails to adequately allege that each Pegasus Defendant completely dominated iGPS in respect to the breach of the Employment Contract. ....................................................................... 11

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

Alter v. Bogoricin,
   No. 97 Civ. 0662(MBM), 1997 WL 691332 (S.D.N.Y. Nov. 6, 1997) .................... 8, 9

American Fuel Corp. v. Utah Energy Development Co.,
   122 F.3d 130 (2d Cir. 1997) ............................................................................... 7

Bell Atl. Corp. v. Twombly,
   127 S. Ct. 1955 (2007) ...................................................................................... 7

Brunswick Corp. v. Waxman,
   599 F.2d 34 (2d Cir. 1979) ................................................................................ 8

Crabtree v. Tristar Auto. Group, Inc.,
   776 F. Supp. 155 (S.D.N.Y. 1991) ................................................................... 2, 4

Freeman v. Complex Computing Co., Inc.,
   119 F.3d 1044 (2d Cir. 1997) ............................................................................ 7

In re Currency Conversion Fee Antitrust Litigation,
   265 F.Supp.2d 385 (S.D.N.Y. 2003) ............................................................... 5, 10

Int'l Aircraft Trading Co. v. Mfr. Trust Co.,
   297 N.Y. 285 (1948) .......................................................................................... 8

Int'l Customs Assocs., Inc., v. Ford Motor Co.,
   893 F. Supp. 1251 (S.D.N.Y. 1995) .................................................................... 2

MAG Portfolio Consultant, GMBH v. Merlin Biomed Group,
   268 F.3d 58 (2d Cir. 2001) ................................................................................ 7

Mellencamp v. Riva Music Ltd.,
   698 F. Supp. 1154 (S.D.N.Y. 1988) ................................................................... 3

Morris v. New York State Dept. of Taxation and Finance,
   82 N.Y.2d 135 (1993) ................................................................................... 7, 11

Old Republic Ins. Co. v. Hansa World Cargo Service,
   170 F.R.D. 361 (S.D.N.Y. 1997) ....................................................................... 4

Prescient Acquisition Group, Inc. v. MJ Pub. Trust,
   No. 05 Civ. 6298(PKC), 2006 WL 2136293 (S.D.N.Y. July 31, 2006) .............. 5

Sahu v. Union Carbide Corp.,
    No. 04 Civ. 8825(JFK), 2006 WL 3377577 (S.D.N.Y. Nov. 20, 2006) ...................... 7, 8

Wm. Passalacqua Builders, Inc. v. Resnick Developers,
    933 F.2d 131 (2d Cir. 1991) ........................................................................................ 10

**Statutes**
Fed. R. Civ. P. 8(a) ................................................................................................................... 2

## PRELIMINARY STATEMENT

This Reply Memorandum ("Reply Brief") is submitted in further support of the motion to dismiss ("Motion to Dismiss") by (1) Pegasus Capital Advisors, LP, (2) Pegasus Capital Advisors G.P., LLC, (3) Pegasus Capital Advisors III, LP, (4) Pegasus Investors III, LP and (5) Pegasus Investors III G.P., LLC (each a "Pegasus Defendant).

Bearing little resemblance to the Complaint in this action, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (the "Opposition Brief") attempts to assert claims that neither appear in the Complaint nor would be sustainable as a matter of law if they did. Despite the fact that the words "domination," "control," "alter-ego" and "veil-piercing" appear nowhere in the Complaint, Plaintiff argues that the Complaint adequately alleges either veil-piercing liability, alter-ego liability, or liability under some undefined interference with contract theory against 5 undifferentiated entities that Plaintiff lumps together as co-defendants of the only party to the employment contract at issue (the "Employment Contract"), iGPS Company, LLC ("iGPS"). Plaintiff would subject those 5 separate (and undifferentiated) entities to the time, expense and distraction of this litigation despite the fact that there is not a single allegation in the Complaint that would tie any one of those entities to her breach of contract claim. Amazingly, Plaintiff then labels the motion to dismiss by those entities as "make work."

Even if the Complaint did assert any theory of liability against the Pegasus Defendants, Plaintiff, as the former Chief Financial Officer ("CFO") of Defendant iGPS, has not alleged (and cannot allege) domination, control, the absence of corporate formalities, a commingling of funds or any of the other traditional factors relevant to an alter-ego claim. As explained in the Pegasus Defendants' initial Memorandum in Support of the Motion to Dismiss (the "Initial Brief") and this Reply Brief, Plaintiff's breach of contract claim must be dismissed against each of the 5 Pegasus Defendants because (a) none of the Pegasus Defendants was a party to the Employment

Contract, (b) Plaintiff fails to meet the notice pleading requirement of Rule 8(a) and (c) even if Plaintiff did meet the notice pleading requirement, the Complaint fails to state an alter ego claim.

## ARGUMENT

I. **PLAINTIFF'S BREACH OF CONTRACT CLAIM AGAINST NON-SIGNATORIES MUST BE DISMISSED**

    A. **Plaintiff fails to distinguish her breach of action from cases cited in Pegasus Defendants' Initial Brief.**

This is a breach of contract action against iGPS as the only other party to the Employment Contract with the Plaintiff, Susan Yoss. Seeking to cast her net as widely as possible, Plaintiff has named 5 separate Pegasus entities as Defendants. In her description of the entities, Plaintiff only identifies the entities by name and alleges their places of incorporation and principal places of business. (Compl. ¶¶ 10-15.) She then defines the 5 entities collectively as "Pegasus," and simply claims that "At least until December 5, 2007, Pegasus was the primary shareholder of IGPS" (Compl. ¶ 21.) Despite the fact that Plaintiff served as the former CFO of iGPS (and an operating advisor to Pegasus) and is well-positioned to know if she had any valid claim against any of those entities, there is not a single allegation that identifies which of those 5 entities (if any) holds shares in iGPS, what role (if any) that any of those entities played in the management of iGPS (or "control" of iGPS as alleged in the Opposition Brief but not in the Complaint), or what role (if any) that any of those entities played in Plaintiff's breach of contract claim. There simply is no basis of liability whatsoever offered against any of those defendants in the Complaint.

As the cases cited in the Initial Brief show, this Court will dismiss a breach of contract claim against non-signatory shareholders absent an alternative basis of liability. Plaintiff attempts to distinguish its action from three cases cited in the Initial Brief: <u>Int'l Customs Assocs., Inc. v. Ford Motor Co.</u>, 893 F. Supp. 1251 (S.D.N.Y. 1995), <u>Crabtree v. Tristar Automotive</u>

Group, Inc., 776 F. Supp. 155 (S.D.N.Y. 1991), and Mellencamp v. Riva Music Ltd., 698 F. Supp. 1154 (S.D.N.Y. 1988). In each of these cases, the plaintiff brought a breach of contract claim against non-signatories (or "strangers") to the contract at issue that ranged from a parent company to individual shareholders to companies that shared common directors or owners. In each of these cases, the plaintiff failed to allege an alternative basis of liability, whether under an alter ego theory or otherwise. And in each of these cases, this Court dismissed the breach of contract claim against the non-signatory defendants.

Plaintiff argues that the plaintiff in Ford Motor "did not allege a single fact" to support an alter ego claim. (Opp. Br. at 8.) (emphasis in original). It is unclear on what basis Plaintiff makes this argument, but what is clear is that the complaint in Ford Motor "[did] not allege that Ford is the 'alter ego' of Lio Ho and that the corporate veil should be pierced to reach Ford." 893 F. Supp. at 1257. This is precisely the case here: Plaintiff does not allege that the 5 Pegasus Defendants are each an alter ego of iGPS and that the corporate veil should be pierced to reach each of the 5 Pegasus Defendants.

Plaintiff's attempts to distinguish Mellencamp are unclear and actually support the Motion to Dismiss. Plaintiff attempts to distinguish that case by stating that "In *Mellencamp*, the shared directors were 'strangers' to the contract at issue." (Opp. Br. at 8.) (emphasis added). In fact, however, like here, the "strangers" to the contract were two companies, Avir Music, Inc. and H.G. Music, Inc., not individual directors as Plaintiff writes. 698 F. Supp. at 1160. Plaintiff then apparently suggests that because the Pegasus Defendants allegedly were "integrally involved in her employment and the governing contract from start to finish," (this allegation does not appear in the Complaint) they were not strangers to the Employment Contract. But what this Court meant by "strangers to a contract" in Mellencamp was that Avir Music, Inc. and H.G.

Music, Inc. were not parties to the contract at issue. Both of these companies were actively involved in the administration of the contracts at issue and also shared the same director and/or owner as the actual signatories. Id. Thus, even under the theory espoused in Plaintiff's Opposition Brief, this case is directly on point and fatal to Plaintiff's claims.

Lastly, Plaintiff attempts to distinguish its case from Crabtree, a case in which this Court dismissed breach of contract claims against the shareholders of a closely held corporation, arguing that the plaintiff in Crabtree did not allege "in any way, shape or form facts that could prove that TriStar was . . . an alter ego dominated by the individual defendants . . ." (Opp. Br. at 8.) (emphasis in original). Plaintiff adds that the Complaint makes "sturdy and far-ranging factual allegations against Pegasus." Id. But as discussed more fully below, Plaintiff's allegations against "Pegasus" (an undifferentiated group of 5 defendants) are insufficient "to suggest that the equitable remedy of ignoring the corporate form is required . . . [Thus,] justice demands that the breach of contract claim be dismissed against the [non-signatory] defendants." Crabtree, 776 F. Supp. at 167.

## II.  PLAINTIFF FAILS TO MEET NOTICE PLEADING REQUIREMENTS OF RULE 8(a)

### A.  Plaintiff's failure to differentiate among the 5 Pegasus Defendants warrants dismissal of the alter ego claim under Rule 8(a).

Not once does Plaintiff differentiate among the 5 different Pegasus Defendants whom she refers to collectively as "Pegasus" throughout the Complaint and Opposition Brief. Not a single allegation specifies which wrong was committed by which defendant. Where a complaint makes sweeping allegations against a group of undifferentiated defendants, the complaint fails to meet the notice pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8(a)"). See, e.g., Old Republic Ins. Co. v. Hans World Cargo Servs. Inc., 170 F.R.D. 361 (S.D.N.Y. 1997). In Old Republic, this Court held that the plaintiff's alter ego leading was

inadequate "[e]ven under the liberal 'notice' pleading requirements of Rule 8(a)" because the complaint failed to allege which specific wrongs were committed by which specific defendants and, instead, "merely assert[ed] than an undifferentiated group of 'defendants' conspired to defraud [plaintiff]." 170 F.R.D. 361, 375.

This is precisely what Plaintiff does in her Complaint. Plaintiff makes sweeping allegations against 5 different parties without any attempt to differentiate among those entities. Similarly, Plaintiff also fails to differentiate between iGPS (signatory to the Employment Contract) and Pegasus (non-signatories to the Employment Contract). For example, Plaintiff improperly asserts that "*Defendants* have refused to honor *their* written commitment to Ms. Yoss." (Compl. ¶ 1.) (emphasis added). But there is only one written commitment at issue—the Employment Contract—and the only Defendant that was party to that written commitment was iGPS.

**B.    Plaintiff failed to give adequate notice of her alter ego claim under Rule 8(a).**

Plaintiff cannot claim to have given adequate notice of her newly-asserted alter ego claim without once having used the term "alter ego" or similar words. Prescient Acquisition Group, Inc. v. MJ Pub. Trust, No. 05 Civ. 6298(PKC), 2006 WL 2136293 (S.D.N.Y. July 31, 2006). In Prescient Acquisition, the plaintiff asserted a breach of contract claim against both a party and a non-party to a contract. The plaintiff referred to the two defendants interchangeably in the complaint, but "the plaintiff did not expressly allege any alter ego theory under which [the non-party to the contract] would be liable." Id. at *4. This Court held that,

> [W]ithout a specific allegation that plaintiff is seeking to hold [the non-party to the contract] liable as the alter ego (or equivalent words) of [the party to the contract], the pleading fails to satisfy the minimal notice requirements of Rule 8(a), Fed.R.Civ.P.

(citing In re Currency Conversion Fee Antitrust Litig., 265 F.Supp.2d 385 (S.D.N.Y. 2003)).

In a complaint alleging alter ego liability, a defendant would reasonably expect to see the terms "alter ego" or "pierce the corporate veil" or words that relate to the elements of an alter ego or veil-piercing claim, such as "control" or "domination." But Plaintiff's Complaint is completely devoid of any words that may even hint at an alter ego claim. Plaintiff recognizes this defect in the Complaint and attempts to rewrite the Complaint in her Opposition Brief by making liberal use of terms that are suggestive of an alter ego claim. The following chart compares the number of times certain relevant terms (including their various conjugations) appear in the Opposition Brief and the Complaint:

| Term | Opposition Brief | Complaint |
| --- | --- | --- |
| Alter Ego | 11 | 0 |
| To Pierce Corporate Veil | 3 | 0 |
| To Dominate | 5 | 0 |
| To Control | 9 | 0 |
| To Manage | 2 | 0 |
| To Monitor | 1 | 0 |

Plaintiff argues that the Complaint adequately pleaded facts to support her alter ego claim and that "labels and conclusions" were unnecessary. (Opp. Br. at 2.) But regardless of whether the Complaint pleaded facts or "labels and conclusions" or both, it is undeniable that the Complaint failed to give notice of an alter ego claim and is therefore inadequate under Rule 8(a). As the chart helps to show, the Complaint left the 5 Pegasus Defendants without even a hint as to how each was liable for a breach of a contract to which it was not a party. A complaint "must contain something more . . . than . . . a statement of facts that merely creates a *suspicion* [of] a

legally cognizable right of action." <u>Twombly</u>, 127 S. Ct. 1955, 1964 (quoting Wright & Miller, Federal Practice and Procedure § 1216, pp. 235-6) (emphasis added). The Complaint's allegations do not rise to the level of constituting even a *suspicion* of an alter ego claim.

As Plaintiff herself notes, "A 12(b)(6) motion is based solely on the allegations in the complaint." (Opp. Br. at 2). Accordingly, regardless of the number times the Opposition Brief attempts to slip in the term "alter ego" or another term suggesting such a claim, it is the lack of notice in the Complaint that matters.

### III. EVEN IF COMPLAINT MET NOTICE PLEADING REQUIREMENTS OF RULE 8(a), COMPLAINT STILL FAILS TO ADEQUATELY STATE ALTER EGO CLAIM

#### A.   New York law on piercing the corporate veil.

Under New York law, piercing the corporate veil "is a rare exception to the well-settled American principle of limited liability for individual and corporate shareholders." <u>Sahu v. Union Carbide Corp.</u>, No. 04 Civ. 8825(JFK), 2006 WL 3377577, at *3 (S.D.N.Y. Nov. 20, 2006) (Slip Op.). In order to pierce the veil, the plaintiffs must show that:

> (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury.

<u>Morris v. N.Y. State Dep't of Taxation and Finance</u>, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807 (1993).

It is well settled that "domination, standing alone, is not enough" to pierce the corporate veil, <u>Morris</u>, 82 N.Y.2d at 141, and that the plaintiff must prove both prongs of the two-prong test. <u>See, e.g., MAG Portfolio Consult, GMBH v. Merlin Biomed Group, LLC.</u>, 268 F.3d 58, 63 (2d Cir. 2001); <u>Freeman v. Complex Computing Co., Inc.</u>, 119 F.3d 1044 (2d Cir. 1997); <u>American Fuel Corp. v. Utah Energy Dev. Co.</u>, 122 F.3d 130, 134 (2d Cir. 1997). In fact, it is the fraud-or-wrong prong that "encompasses the overarching goal of the veil-piercing doctrine,

which is to prevent fraud or achieve equity." Sahu, 2006 WL 3377577 at *6 (citing Int'l Aircraft Trading Co. v. Mfr. Trust Co., 297 N.Y. 285, 292 (1948)); see Brunswick Corp. v. Waxman, 599 F.2d 34, 36 (2d Cir. 1979).

Thus, in order to adequately state an alter ego claim under New York law, Plaintiff would have to plead that each of the 5 Pegasus Defendants (1) exercised complete domination of iGPS in respect of the breach of the Employment Contract; and (2) that such domination was used to cause the alleged wrong against Plaintiff. Any such allegations are completely absent from the Complaint.

### B. Fraud-or-Wrong Prong: Complaint fails to adequately allege that each Pegasus Defendant used its domination of iGPS to cause the alleged wrong to Plaintiff.

Even if Plaintiff adequately pleaded elements of domination, the Complaint should still be dismissed because Plaintiff fails adequately allege that each of the 5 Pegasus Defendants used its domination of iGPS to cause the breach of Employment Contract at issue. This Court will dismiss a complaint where the plaintiff fails to allege that the defendant used its domination of the company at issue to cause the alleged wrong to the plaintiff. Alter v. Bogoricin, No. 97 Civ. 0662(MBM), 1997 WL 691332 (S.D.N.Y. Nov. 6, 1997). In Alter, a case with nearly identical facts to this case, the plaintiff brought a claim for breach of his employment contract against his employer, a closely held corporate entity, and its three shareholders. Id. The plaintiff claimed that the defendants failed to pay incentive and salary payments. Id. at *4. In a complaint pleaded more adequately than Plaintiff's Complaint, the plaintiff in Alter alleged that the defendants "thoroughly [dominate] each of these entities, ignores corporate formalities, and commingles corporate funds with personal funds." Id. at *1.

Holding that it was unnecessary to reach the domination prong when the fraud-or-wrong prong was not satisfied, this Court dismissed the case against all three non-signatory

shareholders because the plaintiff failed to "establish a relationship between the alleged wrong against him and defendants' alleged abuse of the corporate form." Id. at *5. This Court reasoned that,

> Although plaintiff contends that [defendant] "ignored corporate formalities, diverted corporate resources and commingled [personal] funds" in his dealing with JBRE Corp., he does not allege that any of these abuses of the corporate form led to a violation of the Employment Agreement . . .
>
> In essence, plaintiff seeks to convert a breach of contract claim against his former employer, JBRE Corp., into a multi-party litigation based solely on the unexceptional fact that in closely held corporations the owners typically make the employment decisions.

Id. at *5-6. (emphasis added).

As in Alter, the "wrong" allegedly committed against Plaintiff is not the termination of Plaintiff's employment but the alleged nonpayment of the severance payments Plaintiff claims she is entitled to under the Employment Agreement. (Compl. ¶ 65.) Thus, in order to adequately plead the fraud-or-wrong prong of an alter ego claim, Plaintiff would have to plead that each of the 5 Pegasus Defendants used its complete domination of iGPS to specifically cause the nonpayment of the severance payments Plaintiff claims she is entitled to. Plaintiff herself admits that this is a requirement under New York law: "Most importantly, as required by New York courts, Plaintiff has alleged facts asserting that Pegasus directed the event giving rise to Plaintiff's claim—Defendants' decisions to fire Ms. Yoss and deny her payments." (Opp. Br. at 9.) (emphasis added). But again, this new allegation is not contained in the Complaint, nor is it supported by a single factual allegation in the Complaint.

In addition to the new allegation above, the Opposition Brief tries to add the following new allegations to the Complaint:

1. "[Pegasus Defendants] were responsible for Ms. Yoss's termination *and iGPS's breach of her employment contract*." (Opp. Br. 1) (emphasis added).

2. "Pegasus is liable . . . by virtue of . . . its interference with iGPS's contractual obligations . . ." (Opp. Br. at 3);

3. "Here, contrary to what Defendants argue, the facts alleging Pegasus's extensive involvement and control over iGPS generally—*and specifically playing a crucial role in iGPS's breach of Ms. Yoss's employment contract*—satisfy Plaintiff's notice requirements under Rule 8(a)." (Opp. Br. at 5) (emphasis added);

4. "Pegasus played a key role in Ms. Yoss's termination *and iGPS's failure to pay Ms. Yoss.*" (emphasis added). (Opp. Br. at 7) (emphasis added); and

5. "[A]nd Pegasus partners and advisors were actively involved in iGPS's decision to *deny Ms. Yoss her contractual payments* after Defendants terminated her." (Opp. Br. at 8).

But these 5 new allegations suffer the same problems as the allegation noted above: First, these new allegations were never made in the Complaint; second, even if these allegations had been made in the Complaint, they are merely conclusory allegations that are not supported by any factual allegations made in the Complaint; and third, even the Opposition Brief continues to lump the 5 Pegasus Defendants together as one without giving a single one of them notice of the claims asserted against it. This is precisely why none of the new allegations above are referenced to citations to the Complaint. As this Court held in In re Currency Conversion, "[P]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard." 265 F.Supp.2d 385, 426.

In addition, Plaintiff devotes a substantial portion of her Opposition Brief citing to the portions of the Complaint that allegedly satisfy certain of the ten factors set forth by the Second Circuit in Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc. But the Passalacqua factors are relevant only to the *domination* prong of the two-prong veil-piercing test. 933 F.2d 131 (2d Cir. 1991). Thus, even if all of Plaintiff's arguments were true and (notwithstanding the fact that Plaintiff did not make specific allegations against each of the 5 Pegasus Defendants) the Complaint did in fact adequately allege a number of Passalacqua

factors, Plaintiff has at best pleaded the domination prong of her alter ego claim. As noted above, "domination, standing alone, is not enough" to pierce the corporate veil, Morris, 82 N.Y.2d at 141.

### C. Domination Prong: Complaint fails to adequately allege that each Pegasus Defendant completely dominated iGPS in respect to the breach of the Employment Contract.

The Complaint also fails to state an alter ego claim because it fails to allege that each of the 5 Pegasus Defendants completely dominated iGPS, not just generally but specifically in respect to the breach of the Employment Contract.

The Opposition Brief cites nine allegations in the Complaint that purport to adequately plead the domination prong of an alter ego claim[1]:

1. "At least until December 5, 2007, Pegasus was primary shareholder of IGPS." (Compl. ¶ 21.);

2. "As part of Defendants' efforts to recruit Ms. Yoss, Richard Weinberg ('Weinberg'), an IGPS board member and partner of Pegasus-operated funds, and other Pegasus executives recruited Ms. Yoss with the express commitment to involve her in Pegasus activities. To this end, Defendants appointed Ms. Yoss Operating Advisor to Pegasus." (Compl. ¶ 19.);

3. "Seven of the eight IGPS board members maintained other high-ranking positions with Pegasus. Every member of the Executive and Compensation Committees of the IGPS board has been affiliated with Pegasus." (Compl. ¶ 28.);

4. "From March 2007 through mid-July 2007, Ms. Yoss worked out of a conference room in Pegasus-leased office on 505 Park Ave, New York, NY." (Compl. ¶ 26.);

5. "Throughout Ms. Yoss's tenure, Pegasus executives, including Weinberg, were actively involved in almost every type of decision and were involved in the daily monitoring of IGPS's business activities." (Compl. ¶ 35.);

6. "Weinberg and Lewis Taffer, IGPS Board Member and Pegasus Operating Advisor, served as employees of IGPS and received compensation and benefits directly from IGPS for their services." (Compl. ¶ 36.);

---

[1] The allegations cited in the Opposition Brief are set forth here in their original form (i.e., from the Complaint), and not as interpreted and rephrased in the Opposition Brief.

7. "Ms. Yoss continued to devote herself fully to her employment with IGPS. By the fall of 2007, however, Moore, Lowe, and Ms. Yoss were all under pressure due to the difficulty IGPS was facing in terms of obtaining financing for its business. Further, Moore and Ms. Yoss at times agued over various business matters, and Defendants began to exclude Ms. Yoss from meetings to which she should have been invited as the CFO." (Compl. ¶ 37.);

8. "On October 22, 2007, Ms. Yoss complained to Moore that Weinberg had suggested to Ms. Yoss that if she was unhappy with her job at IGPS, she should leave. Moore stated to Ms. Yoss that Weinberg did not mean what he had said, and stated that he (Moore) wanted Ms. Yoss to remain with the company." (Compl. ¶ 39.); and

9. "On November 30, 2007, however, Moore told Ms. Yoss that partners of Pegasus 'no longer wanted to deal with you [Ms. Yoss]." (Compl. ¶ 53.).

(Opp. Br. at 5-6).

Note that Plaintiff is unable to cite to a single allegation in the Complaint that supports the conclusion that each of the 5 Pegasus Defendants specifically dominated iGPS at all, much less *in respect to the breach of the Employment Contract*. Even if all of the nine allegations above are accepted as true, Plaintiff has only alleged that the 5 "Pegasus" entities generally were involved in iGPS. Plaintiff would still fail to show that "Pegasus" (or more accurately, each Pegasus Defendant in its individual capacity) specifically dominated iGPS *in respect to the breach of the Employment Contract*. As much as the Opposition Brief's "interpretation" of the Complaint argues that such allegations were contained in the Complaint, they were clearly not. Thus, the Complaint fails to adequately plead the domination prong of an alter ego claim.

## CONCLUSION

For the foregoing reasons, the Pegasus Defendants respectfully request that the Court enter an order dismissing the Complaint against the Pegasus Defendants with prejudice and granting such other and further relief as the Court deems just and proper.

Dated: April 22, 2008
     New York, New York

                          AKIN GUMP STRAUSS HAUER & FELD LLP

                          By:    /s/ Stephen M. Baldini
                                 Stephen M. Baldini (SB-2070)
                                 Austin K. So (AS-8348)
                                 590 Madison Avenue
                                 New York, New York 10022
                                 (212) 872-1000

*Counsel for Defendants Pegasus Capital Advisors, LP, Pegasus Capital Advisors, G.P., LLC, Pegasus Capital Advisors III, LP, Pegasus Investors III, LP, and Pegasus Investors III G.P., LLC*

## CERTIFICATE OF SERVICE

I, Stephen L. Krasner, hereby certify that I caused to be served via electronic notification in accordance with the electronic filing system and via first class mail the Reply Memorandum of Law in Further Support of Motion to Dismiss by defendants Pegasus Capital Advisors, LP, Pegasus Capital Advisors, G.P., LLC, Pegasus Capital Advisors III, LP, Pegasus Investors III, LP, and Pegasus Investors III G.P., LLC, on this 22 day of April 2008 upon the following:

>Laurence S. Moy, Esq.
>Outten & Golden LLP
>3 Park Avenue, 29th Floor
>New York, New York 10016
>
>*Counsel for Plaintiff*

Dated: April 22, 2008
      New York, New York

>/s/ Stephen L. Krasner
>Stephen L. Krasner